UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,

                Plaintiff,

    v.

STEPHEN A. WYNN,

                Defendant.

Case No. 1:22-cv-01372-JEB

## <u>REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT</u>

Reid H. Weingarten (D.C. Bar No. 365893)
Brian M. Heberlig (D.C. Bar No. 455381)
Nicholas P. Silverman (D.C. Bar No. 1014377)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC  20036
Tel: (202) 429-3000
Fax: (202) 429-3902
rweingarten@steptoe.com
bheberlig@steptoe.com
nsilverman@steptoe.com

Robert D. Luskin (D.C. Bar No. 293621)
Leo R. Tsao (*pro hac vice*)
PAUL HASTINGS LLP
2050 M Street, N.W.
Washington, DC  20036
Tel: (202) 551-1700
Fax: (202) 551-0410
robertluskin@paulhastings.com
leotsao@paulhastings.com

*Counsel for Defendant Stephen A. Wynn*

Dated:   August 29, 2022

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I. FARA DOES NOT REQUIRE REGISTRATION AFTER AN INDIVIDUAL CEASES TO ACT AS A FOREIGN AGENT ................................................................. 2

    A. *McGoff*'s Interpretation of § 612(a) Was Part of Its Holding, Not Dicta .............. 2

    B. Section 612(a) Must Be Interpreted Consistently in Civil and Criminal Cases ..... 3

    C. FARA's Legislative History Supports Wynn's Interpretation of § 612(a)............. 4

    D. *McGoff* Is Consistent with FARA's Purpose and the Purpose of Injunctive Relief........................................................................................................................ 5

II. COMPELLING WYNN TO SWEAR THAT HE ENGAGED IN POLITICAL ACTIVITIES AS AN AGENT OF FOREIGN PRINCIPALS WOULD VIOLATE HIS FIFTH AND FIRST AMENDMENT RIGHTS ................................................... 6

    A. Compelling Wynn to Contradict His Past Testimony and Statements Would Violate the Fifth Amendment ............................................................................... 7

    B. Compelling Wynn to Speak a Government-Dictated Message Would Violate the First Amendment ................................................................................................. 9

        1. Strict Scrutiny Applies Because the Requested Relief Would Dictate the Content of Wynn's Speech ........................................................................ 9

        2. The Requested Relief Fails Even Exacting Scrutiny ................................ 12

III. THE COMPLAINT FAILS TO SUFFICIENTLY ALLEGE THAT WYNN ACTED AS AN AGENT OF FOREIGN PRINCIPAL .................................................. 14

    A. The Complaint Fails to Allege That Wynn Had an Agency Relationship with a Foreign Principal.................................................................................................. 14

        1. The Statute's Residual Clause Must Be Read Consistently with Its Other Terms Requiring the Agent to Submit to the Continued Authority or Control of the Principal.............................................................................. 15

        2. The Government's Arguments for a Broad Interpretation of "Request" Are Without Merit.................................................................................... 17

    B. The Government's Opposition Fails to Identify Any Factual Allegations Supporting That Wynn Engaged in Political Activities......................................... 20

    C. The Government Should Not Be Granted Leave to Amend ................................. 23

IV. THE COURT MAY CONSIDER DOCUMENTS INCORPORATED IN THE COMPLAINT .................................................................................................... 24

CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Ams. for Prosperity Found. v. Bonta*,
    141 S. Ct. 2373 (2021) ............................................................................................................12

*Ashcroft v. ACLU*,
    542 U.S. 656 (2004) ..............................................................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................................23

*Att'y Gen. v. Irish N. Aid Comm.*,
    668 F.2d 159 (2d Cir. 1982) ...........................................................................................17, 18

*Attorney General v. Irish People*,
    796 F.2d 520 (D.C. Cir. 1986) ..............................................................................................19

*Bell Atl. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................................21

*Block v. Meese*,
    793 F.2d 1303 (D.C. Cir. 1986) ..............................................................................................9

*Crandon v. United States*,
    494 U.S. 152 (1990) ................................................................................................................3

*In re Dreier LLP*,
    453 B.R. 499 (Bankr. S.D.N.Y. 2011) ..................................................................................24

*Gartrell v. Ashcroft*,
    191 F. Supp. 2d 23 (D.D.C. 2002) ........................................................................................14

*Gavin v. Dep't of Air Force*,
    314 F. Supp. 3d 297 (D.D.C. 2018) ......................................................................................24

*Habliston v. FINRA Dispute Resol., Inc.*,
    251 F. Supp. 3d 240 (D.D.C. 2017) ......................................................................................23

*Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Bos.*,
    515 U.S. 557 (1995) ........................................................................................................10, 11

*Jenkins v. Strauss*,
    931 A.2d 1026 (D.C. 2007) ...................................................................................................16

*Kastigar v. United States*,
    406 U.S. 441 (1972) ................................................................................................................8

*Kent v. Bledsoe,*
 No. 09-cv-1701, 2010 WL 771583 (M.D. Pa. Mar. 2, 2010) ...................................................24

*Landmark Legal Found. v. IRS,*
 267 F.3d 1132 (D.C. Cir. 2001) ...........................................................................................18

*Leocal v. Ashcroft,*
 543 U.S. 1 (2004) ...................................................................................................................3

*Lewis-Burke Assocs. LLC v. Widder,*
 725 F. Supp. 2d 187 (D.D.C. 2010) .......................................................................................3

*Louis v. Hagel,*
 221 F. Supp. 3d 40 (D.D.C. 2016) .......................................................................................24

*McClendon v. Long,*
 22 F.4th 1330 (11th Cir. 2022) ...........................................................................................11

*McDonnell v. United States,*
 579 U.S. 550 (2016) ........................................................................................................16, 17

*Meese v. Keene,*
 481 U.S. 465 (1987) .......................................................................................................9, 13

*Mia. Herald Publ'g Co. v. Tornillo,*
 418 U.S. 241 (1974) ...........................................................................................................11

*Nat'l Ass'n of Mfrs. v. SEC,*
 800 F.3d 518 (D.C. Cir. 2015) ...............................................................................................9

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n,*
 475 U.S. 1 (1986) ................................................................................................................11

*Podany v. Robertson Stephens, Inc.,*
 350 F. Supp. 2d 375 (S.D.N.Y. 2004) .................................................................................23

*R.A.V. v. City of St. Paul,*
 505 U.S. 377 (1992) ...........................................................................................................14

*Riley v. Nat'l Fed'n of the Blind of N.C. Inc.,*
 487 U.S. 781 (1988) .......................................................................................................9, 13

*Rumsfeld v. Forum for Acad. and Inst. Rights, Inc.,*
 547 U.S. 47 (2006) .............................................................................................................10

*Sarfati v. Antigua & Barbuda,*
 923 F. Supp. 2d 72 (D.D.C. 2013) .......................................................................................25

*SEC v. Steadman*,
  967 F.2d 636 (D.C. Cir. 1992) ............................................................................6

*Seminole Tribe of Fla. v. Florida*,
  517 U.S. 44 (1996) ............................................................................................2

*Slate v. Pub. Def. Serv. for D.C.*,
  31 F. Supp. 3d 277 (D.D.C. 2014) ...................................................................24

*Tate v. Showboat Marina Casino P'ship*,
  431 F.3d 580 (7th Cir. 2005) ............................................................................2

*Tepeyac v. Montgomery Cnty.*,
  5 F. Supp. 3d 745 (D. Md. 2014) ....................................................................12

*United States v. Care Alts.*,
  952 F.3d 89 (3d Cir. 2020) ...............................................................................7

*United States v. Hoskins*,
  __ F.4th ___, 2022 WL 3330357 (2d Cir. Aug. 12, 2022) .............................15

* *United States v. McGoff*,
  831 F.2d 1071 (D.C. Cir. 1987) .......................................................1, 2, 3, 4, 5, 12

*United States v. Rafiekian*,
  991 F.3d 529 (4th Cir. 2021) ..........................................................................19

*United States v. Thompson/Center Arms Co.*,
  504 U.S. 505 (1992) ..........................................................................................3

*United States v. Yellow Cab Co.*,
  340 U.S. 543 (1951) ..........................................................................................5

*Wash. Post v. McManus*,
  355 F. Supp. 3d 272 (D. Md. 2019) ............................................................11, 23

*Yates v. United States*,
  574 U.S. 528 (2015) ........................................................................................16

## **Statutes**

18 U.S.C. § 951 ....................................................................................................19

18 U.S.C. § 6001 ....................................................................................................8

22 U.S.C. § 611 .................................................................................................15, 22

22 U.S.C. § 612 ...............................................................................................2, 3, 4

22 U.S.C. § 618 ................................................................................................2, 3

Pub. L. 89-486, 80. Stat. 248 (July 4, 1966) ..................................................5

## **Other Authorities**

ABA Task Force on the Foreign Agents Registration Act, *FARA: Issues &
    Recommendations for Reform* at 1 (July 16, 2021),
    https://www.fara.us/assets/htmldocuments/ABA%20ILS%20
    FARA%20Task%20Force%20Report%2009-29-21.pdf ..........................................10

Cambridge Dictionary,
    https://dictionary.cambridge.org/us/dictionary/english/sensitive ...........................................21

DOJ Justice Manual § 9-23.210 ........................................................................8

DOJ, *Recent FARA Cases*, https://www.justice.gov/nsd-fara/recent-cases ...................................22

Fed. R. Civ. P. 12(b)(6) ....................................................................................23

Fed. R. Civ. P. 15(a)(1) ....................................................................................23

Local R. Civ. P. 5.1(g) ......................................................................................25

Inquiry Into the Matter of Billy Carter and Libya: Hearings Before the Subcomm.
    to Investigate the Activities of Foreign Governments of the Senate Comm. On
    the Judiciary, 96th Cong. (1980) ....................................................................18, 19

*Restatement (Third) of Agency* § 1.01 (2006) ............................................................15

Robert Mueller, 1 *Report on the Investigation Into Russian Interference in the
    2016 Presidential Election* (Mar. 2019) ............................................................22

Shambie Singer, 3 *Sutherland Statutes and Statutory Construction* § 59:4 (8th ed.)......................3

## INTRODUCTION

The government's Opposition confirms that the Complaint fails to state a claim for failure to register under the Foreign Agents Registration Act (FARA); requests relief that violates Wynn's First and Fifth Amendment rights; and fails to allege facts sufficient to establish that Wynn engaged in political activities as an agent of a foreign principal.

The Complaint fails to allege a current or imminent violation of FARA, as required for injunctive relief.  While the D.C. Circuit's holding in *McGoff*—that FARA's obligation to register terminates when an individual stops acting as an agent of a foreign principal—arose in a criminal case, a statute with criminal and civil applications must be interpreted consistently in both contexts.  Moreover, the government's requested relief would require Wynn to affirm government-dictated statements.  Whether those statements are facts or opinions, they would contradict Wynn's past statements to the government and expose him to criminal jeopardy in violation of the Fifth Amendment and compel him to speak in violation of the First Amendment.

Equally, the Complaint fails to allege facts sufficient to establish an agency relationship or political activities undertaken on behalf of the principal, as the statute requires.  *First*, although the government argues that any action undertaken at the mere "request" of a foreign principal is sufficient to create an agency relationship, such an expansive reading would be contrary to traditional principles of statutory construction and would render the rest of the statutory clause mere surplusage.  *Second*, the government fails to identify any allegation that Wynn acted to influence a political decision on behalf of a foreign principal, rather than delivering a message to the U.S. government because Wynn believed that sharing the request was in the United States' interest.  The government has spent over four years investigating this matter, and the resulting Complaint is insufficient to state a claim.  The Complaint should be dismissed with prejudice and without leave to amend.

1

**ARGUMENT**

I.   **FARA DOES NOT REQUIRE REGISTRATION AFTER AN INDIVIDUAL CEASES TO ACT AS A FOREIGN AGENT**

The government does not contest that 22 U.S.C. § 612(a) governs when an individual is required to register under FARA, or that the D.C. Circuit has unambiguously held that § 612(a)'s obligation to file ends on "the last day that an individual acts as an agent of a foreign principal." *United States v. McGoff*, 831 F.2d 1071, 1096 (D.C. Cir. 1987).  Because any agency relationship ended years ago, the Complaint fails to allege that Wynn is engaged in or about to engage in a violation of § 612(a), and thus fails to state a claim under § 618(f).

A.   *McGoff*'s Interpretation of § 612(a) Was Part of Its Holding, Not Dicta

Without taking issue with *McGoff*'s interpretation of § 612(a), the government nonetheless argues that the interpretation was not "outcome-determinative or otherwise central to the holding."  Pl.'s Opp. to Def's Mot. to Dismiss the Complaint at 10, Dkt. 14 (Aug. 17, 2022) ("Opp.").  This argument cannot be squared with the D.C. Circuit's unambiguous admonition that "our focus … must necessarily include the proper interpretation of [§ 612(a)]," that "resolution of the issue before us lies in the duration of the obligation to file imposed by [§] 612(a)," and that "the decisive question … turns on the duration of the registration obligation of [§] 612(a)."  *McGoff*, 831 F.2d at 1079, 1081-82.

"When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996); *Tate v. Showboat Marina Casino P'ship*, 431 F.3d 580, 582 (7th Cir. 2005) (Posner, J.) ("[T]he holding of a case includes, besides the facts and the outcome, the reasoning essential to that outcome.").  As *McGoff* made explicitly clear, its interpretation of § 612(a) is part of its holding and compels dismissal of this case because the Complaint's sole

basis for seeking a civil injunction is its allegation that Wynn violated § 612(a).  Compl. ¶¶ 39-42 (Count I, Violation of 22 U.S.C. § 612(a)).

**B.      Section 612(a) Must Be Interpreted Consistently in Civil and Criminal Cases**

The government suggests *McGoff* is inapplicable because the government here is pursuing a civil remedy under § 618(f), rather than criminal enforcement under §§ 618(a), (e).  As the government acknowledges, however, FARA provides both a civil injunctive remedy and criminal enforcement remedy, Opp. at 4, both of which are based on the failure to register when obligated to do so by § 612(a).  As the Supreme Court has stated, "we must interpret [a] statute consistently, whether we encounter its application in a criminal or noncriminal context."  *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004); *see also Lewis-Burke Assocs. LLC v. Widder*, 725 F. Supp. 2d 187, 194 (D.D.C. 2010) ("The [Computer Fraud and Abuse Act] is primarily a criminal statute, with a civil cause of action, and a court is bound to interpret the statute consistently…").

This principle of consistent statutory interpretation includes interpretations supported by the rule of lenity.  Although the government argues that the rule of lenity has "no bearing on the interpretation of § 618(f)," Opp. at 12, this case involves a dispute over the interpretation of § 612(a), not § 618(f).  As the government acknowledges, the rule of lenity applies in civil cases interpreting "a statutory provision with both criminal and noncriminal application."  *Id.* (citing *Kasten v. Saint Gobain Performance Plastics Corp.*, 563 U.S. 1, 16 (2011)).  Indeed, the Supreme Court has repeatedly applied the rule of lenity in civil cases involving a statute with criminal applications.  *See, e.g.*, *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517-18 (1992); *Crandon v. United States*, 494 U.S. 152, 158 (1990); *see also* Shambie Singer, 3 *Sutherland Statutes and Statutory Construction* § 59:4 (8th ed.) ("If a law has both criminal and civil applications, the rule of lenity governs its interpretation in both settings.").  Here, § 612(a) has both criminal (*see* §§ 618(a), (e) (as applied in *McGoff*)) and civil (*see* § 618(f) (as applied in

Compl. ¶¶ 1, 39-42)) applications.  Simply put, the statute's terms must be interpreted the same way in both contexts.  Any other result would lead to hopeless confusion, because an individual would be forced to guess whether the government might proceed criminally or civilly in assessing whether he or she has an obligation to register.

The government is also incorrect when it claims that the *McGoff* majority "declin[ed]" (Opp. at 12) to adopt the dissent's view that "[i]f the obligation to file ends with the termination of the agency relationship, then … the United States will be unable to use an injunction to compel [retroactive] registration, since the agent is no longer under any obligation to register." *McGoff*, 831 F.2d at 1103.  The court did not, in fact, "declin[e]" to adopt the interpretation that injunctive remedies are unavailable for wholly past conduct.  Rather, the majority stated, "[a]ssuming *arguendo* that injunctive remedies would not lie once the individual's agency status has terminated," the government was "far from powerless" because it could still pursue criminal enforcement.  *Id.* at 1094 n.32.

## C.     FARA's Legislative History Supports Wynn's Interpretation of § 612(a)

The government's reliance on legislative history that pre-dates the enactment of civil injunctive relief under FARA is badly misplaced.  Opp. at 13-14.  The government cites *McGoff*'s summary of legislative history surrounding the 1950 FARA amendments, in which Congress explained that under then-existing law, a criminal defendant required to register under FARA could "evade the Act's requirements by ceasing their activities and claiming as an affirmative defense that withdrawal from an agency relationship automatically eliminated liability for failure to file."  *McGoff*, 831 F.2d at 1087.  However, that was a reference to trial strategy in *criminal cases involving liability*, not civil injunctive suits.  *Id.* at 1089 n.27.  Civil injunctive suits (which do not impose "liability" at all) did not exist at the time and were not added to FARA until the 1966 amendments.  Pub. L. 89-486, 80. Stat. 248 (July 4, 1966).   By

4

attempting to apply this statement about criminal liability to then non-existent civil injunctive authority, the government is mixing apples and oranges.  *See United States v. Yellow Cab Co.*, 340 U.S. 543, 549-50 & n.8 (1951) (rejecting government reliance on legislative history from earlier versions of a bill).

### D.    *McGoff* Is Consistent with FARA's Purpose and the Purpose of Injunctive Relief

The government also argues that reading FARA to be "concerned only with the present and 'evaluat[ing] an agent's political speech and activities contemporaneously in their proper context' …. would collapse the government's enforcement authority."  Opp. at 14.  The government's argument has two fundamental flaws.  *First*, contrary to the government's position, the D.C. Circuit in *McGoff* has already assessed the temporal limitations of the statute, instructing: "the stated purpose of FARA, which is to permit, promptly, evaluation of these activities as they are undertaken.  … FARA does not evince an antiquarian interest on Congress' part; FARA's focus is on the here and now."  *McGoff*, 831 F.2d at 1082.  The government cannot plausibly invite this Court to ignore binding precedent to address speculative concerns.

*Second*, the government's concern about a "collapse" in enforcement authority is belied by the fact that it has not brought a single civil injunctive action related to historical conduct in the 35 years since *McGoff*—which is why this issue has not arisen until now.  Moreover, FARA imposes no civil penalties and, therefore, provides no "civil enforcement authority."  The government's only "enforcement authority" is criminal under FARA's unique structure.

FARA's only available civil remedy is an injunction, which is a "drastic remedy" reserved to remedy ongoing or threatened violations.  *See* Mem. Supp. Mot. to Dismiss the Compl. at 13, Dkt. 11-1 (July 18, 2022) ("MTD"); *SEC v. Steadman*, 967 F.2d 636, 648 (D.C. Cir. 1992).  While the government speculates that it "cannot be certain that [Wynn] has in fact

5

ceased engaging in registerable conduct," Opp. at 16, that claim both flips the burden of proof

and is belied by the Complaint itself, which alleges that Wynn acted as an agent only through

August 2017 (¶ 2) and severed ties with Sun in October 2017 (¶ 27).

## II.   COMPELLING WYNN TO SWEAR THAT HE ENGAGED IN POLITICAL ACTIVITIES AS AN AGENT OF FOREIGN PRINCIPALS WOULD VIOLATE HIS FIFTH AND FIRST AMENDMENT RIGHTS

Requiring Wynn to register as an agent of the PRC and Sun would compel Wynn to state

that he engaged in political activities for, on behalf of, and as an agent of the PRC and Sun.  The

specific statements that Wynn would need to make are:

### "Agent"

1. Wynn must register as an agent of a foreign principal under the Foreign Agents Registration Act.
2. Wynn "must furnish as an Exhibit B … a full statement of all the circumstances by reason of which the registrant is acting as an agent of a foreign principal."  The term "registrant" is equated in footnotes with "agent."  *See* Dkt. 11-4 at 11; 4 n.2; 5 nn.4, 6, 7, 9; 6 n.11; 12-13 nn.2-4.

### "For" / "Political Activities"

1. Sun Lijun and the PRC were each a "foreign principal for whom [Wynn] is acting or has agreed to act."  *Id.* at 4.
2. Prior to the date of registration, Wynn "engaged in … political activities, for this foreign principal."  *Id.* at 12.

### "On Behalf of" / "Political Activities"

1. Wynn engaged in "political activities as defined in … the Act" "on behalf of the above foreign principal."  *Id.* at 12.
2.  Wynn "engages in or proposes to engage in" activities "on behalf of the above foreign principal."  *Id.* at 12.
3. When Wynn disseminated informational materials, he did so "on behalf of [his] foreign principal[s]."  *Id.* at 6.

Forcing Wynn to contradict his previous statements that he did not act on behalf of, for, or as an

agent of Sun or the PRC, by stating in a public filing that he did so would (a) furnish a link in the

6

chain of prosecution for false statements or perjury and therefore violate the Fifth Amendment, and (b) compel speech in violation of the First Amendment.

### A.   Compelling Wynn to Contradict His Past Testimony and Statements Would Violate the Fifth Amendment

Wynn's prior statements are in the form of a letter from his counsel to DOJ that was attached as an exhibit to his motion to dismiss (Dkt. 11-3), in an interview conducted by the government, and in his prior sworn testimony during the government's criminal investigation. The direct contradictions between those statements and the speech compelled by the government's requested relief are obvious on their face.  For example, Wynn repeatedly stated that he did not act on behalf of, for, or as an agent of Sun or the PRC.  *See, e.g.*, Dkt. 11-3 at 2 (Wynn acted "because he believed it was in the interests of the United States" and "was not Sun's or the PRC's agent"); *id.* ("Wynn was not representing the PRC, nor acting for or in the PRC's interests."); *id.* at 12 ("Wynn was not representing the PRC's interests before President Trump, or seeking to lobby or influence him for the PRC's benefit.").  These statements are directly at odds with the compelled statements that the government seeks to require in the FARA registration form.  Wynn easily meets his burden to show contradiction and a risk of incrimination on these statements alone.[1]

The government also argues, with no supporting authority, that the Fifth Amendment is not implicated because Wynn's statements are "opinion" and not "factual information."  Opp. at 18-19.  In reality, statements of opinion can be "false" if not sincerely held.  *United States v. Care Alts.*, 952 F.3d 89, 95-96 (3d Cir. 2020) ("[A]n opinion can be considered 'false' for

---

[1] The government faults Wynn for failing to identify specific contradictory statements in his prior testimony.  Opp. at 17-18.  The government fails to disclose, however, that it possesses the transcript from Wynn's interview but has refused to provide it to Wynn's counsel despite repeated requests.  As that transcript would show, Wynn testified consistently with the factual proffer in his counsel's letter.  Dkt. 11-3.

purposes of liability.").  Wynn's statements that he was not Sun's agent, did not act in his or the

PRC's interest, and did not lobby Trump Administration officials involve both sincerely held

opinions and factual assertions.  Notably, the government contradicts itself later in the brief by

arguing that the same statements are mere uncontroversial facts, not opinion, to attempt to

overcome Wynn's First Amendment challenge.  *Id.* at 24-27.  As either opinions or facts,

Wynn's statements are protected by the Fifth Amendment.

The government also misses the point by arguing "[m]ore broadly" that the FARA

registration statements are similar to records required to be kept by regulatory disclosure statutes

that do not implicate the Fifth Amendment, unlike laws that "target 'a highly selective group

inherently suspect of criminal activities.'"  Opp. at 19-20 (quoting *California v. Byers*, 402 U.S.

424, 429-31 (1971) and *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 79 (1965)).

But Wynn does *not* contend that FARA's registration obligation by itself implicates the Fifth

Amendment, nor is this a facial challenge to the statute itself.  Rather, the government's

requested relief would compel Wynn to make statements contradicting his prior statements,

thereby exposing him to potential prosecution for false statements or perjury.  That argument is

supported by a line of cases on contradictory testimony, *see* MTD at 16, which the government

simply ignores in its Opposition.[2]

---

[2] The government maintains in a footnote it "should be given the option of continuing to pursue [this case] or providing some form of immunity to [Wynn] with respect to the past statements."  Opp. at 21 n.1.  The government cites no precedent for the use of formal immunity to compel statements in a FARA registration.  Formal immunity has traditionally been limited to compelling witness testimony in a judicial or other proceeding.  *See Kastigar v. United States*, 406 U.S. 441, 445-46 (1972) ("Immunity statutes … seek a rational accommodation between the imperatives of the privilege and the legitimate demands of government to compel citizens to testify."); *see also* 18 U.S.C. § 6001(3) (limiting agency proceedings eligible for formal immunity).  Moreover, Justice Department policy requires multiple showings that the compelled testimony is necessary to the public interest, *see, e.g.*, DOJ Justice Manual § 9-23.210, none of which appear to have been made.

### B.      Compelling Wynn to Speak a Government-Dictated Message Would Violate the First Amendment

Granting the government's requested relief would also violate Wynn's First Amendment rights by compelling him to state that he engaged in political activities for, on behalf of, and as an agent of the PRC and Sun.  "[M]andating speech that a speaker would not otherwise make necessarily alters the content of the speech" and is "a content-based regulation of speech," subject to strict scrutiny.  *Riley v. Nat'l Fed'n of the Blind of N.C. Inc.*, 487 U.S. 781, 782 (1988).  The government, however, cannot satisfy exacting scrutiny, much less strict scrutiny.

### 1.      Strict Scrutiny Applies Because the Requested Relief Would Dictate the Content of Wynn's Speech

The government presents three arguments for why strict scrutiny should not apply, none of which has merit.  *First*, the government cites two cases, which it argues held that "FARA comports with the First Amendment."  Opp. at 21, 23 (citing *Block v. Meese*, 793 F.2d 1303 (D.C. Cir. 1986) and *Meese v. Keene*, 481 U.S. 465 (1987)).  Those case are inapposite, however, because they only addressed the burden imposed by FARA on predicate political speech.  They do not address FARA's registration requirement, which compels an individual to engage in government-dictated speech by stating—publicly and under oath—that he acted on behalf of, for, and as an agent of a foreign principal.  The compelled speech issue did not arise in *Block* and *Keene* because the litigants in both cases were non-registrants who were not forced to make any statements and were free to remove the political propaganda label.  *See Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 529 (D.C. Cir. 2015); *see also Keene*, 481 U.S. at 495, *rev'g Keene v. Smith*, 569 F. Supp. 1513, 1519 (E.D. Cal. 1983); *Block*, 793 F.2d at 1307 n.1.  The D.C. Circuit addressed this distinction when it held that companies could not be forced to file reports or make public statements on their websites that agreed with the SEC's position that their products had not been proven to be conflict free.  *See* MTD at 23-24 (discussing *Nat'l Ass'n of Mfrs.*).

9

*Second*, the government contends that the requested relief "does not warrant a heightened standard of review," because the FARA registration form requires only disclosure of factual, non-controversial information.  Opp. at 27.  But that argument grossly understates the nature of the affirmative statements that Wynn would be forced to make.  The speech compelled by the government's requested relief is not "non-controversial."  As described *supra* at 6, Wynn would be compelled to state that he was an agent of the PRC and Sun and that he agreed to engage in political activities for and on behalf of those foreign principals.  Wynn vehemently disagrees with each of those statements.  Whether it is a statement of opinion or fact, compelling Wynn to state that he acted as an agent of the PRC and Sun is highly controversial and would damage his reputation.  As explained by an American Bar Association Task Force co-chaired by the former Chief of the DOJ section administering FARA, FARA's terminology is "stigmatizing" and "regularly associated colloquially with covert government-sponsored espionage activities."  *See* ABA Task Force on the Foreign Agents Registration Act, *FARA: Issues & Recommendations for Reform* at 1 (July 16, 2021), https://www.fara.us/assets/htmldocuments/ABA%20ILS%20 FARA%20Task%20Force%20Report%2009-29-21.pdf.  The PRC is also a political lightning rod.  This lawsuit has resulted in a wave of negative publicity, reporting the government's inaccurate allegations that Wynn acted for the PRC and tarnishing his reputation.  Forcing Wynn himself to parrot these statements would do untold further harm.

Moreover, the government is wrong that heightened First Amendment scrutiny does not apply to statements of fact.  *See Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995) (holding that First Amendment protection "applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact the speaker would rather avoid"); *see also Rumsfeld v. Forum for Acad. and Inst. Rights, Inc.*, 547 U.S. 47, 61-62 (2006)

("[C]ompelled statements of fact …, like compelled statements of opinion, are subject to First Amendment scrutiny.").  Disclosures of non-controversial facts "in commercial advertising" may be subject to the *Zauderer* rule (*see* MTD at 22-23), but "outside that context," strict scrutiny applies in the absence of another exception.  *See Hurley*, 515 U.S. at 573; *Wash. Post v. McManus*, 355 F. Supp. 3d 272, 296 (D. Md.) ("The 'exacting scrutiny' standard [is] … a limited exception to the general rule that compelled disclosure laws, like all content-based regulations, must overcome strict scrutiny."), *aff'd*, 944 F.3d 506 (4th Cir. 2019).  This is particularly true when the speaker believes the compelled statements of fact to be false.  *See infra* § II.B.2.

*Lastly*, the government incorrectly asserts that Wynn's First Amendment rights would not be violated by the requested injunction because he could choose to state his disagreement with the compelled statements despite affirming their veracity under oath.  Opp. at 27.  That Wynn could supplement the compelled speech (with which he disagrees) with voluntary speech (with which he agrees) is *always* present in *every* compelled speech challenge and is legally irrelevant. The First Amendment prohibits the government from "requir[ing] speakers to affirm in one breath that which they deny in the next."  *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n*, 475 U.S. 1, 16 (1986) (striking down compelled speech despite company's ability to respond because "[t]hat kind of forced response is antithetical to the free discussion that the First Amendment seeks to foster"); *Mia. Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 257 (1974) (newspaper could not be compelled to run counter-editorials).  For example, in *McClendon v. Long*, the Eleventh Circuit reversed a district court decision upholding a requirement that sex offenders post warning signs in their front yards.  As the court explained, "the plaintiffs' ability to place their own yard signs disagreeing with the [compelled] warning signs" did not "cure the original violation."  22 F.4th 1330, 1337 (11th Cir. 2022).

### 2.     The Requested Relief Fails Even Exacting Scrutiny

Even if the Court were to apply exacting scrutiny instead of strict scrutiny, the government would still fail that standard as applied to Wynn.  "In an as-applied challenge, the state must justify the challenged regulation with regard to its impact on the [counterparty]." *Tepeyac v. Montgomery Cnty.*, 5 F. Supp. 3d 745, 753 (D. Md. 2014) (quoting *Educ. Media Co. v. Insley*, 731 F.3d 291, 298 (4th Cir. 2013)).  The exacting scrutiny test requires the government to demonstrate, as applied to Wynn, that (1) the compelled disclosure has a substantial relationship with a sufficiently important governmental interest, and (2) "narrow tailoring."  *See Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383 (2021) (resolving split on exacting scrutiny standard); *contra* Opp. at 28 n.4 (incorrectly describing the exacting scrutiny standard based on pre-*Bonta* law).

Wynn made three arguments: (1) exacting scrutiny does not permit compelled statements of ideological beliefs or compelled statements of fact that the speaker believes to be false, MTD at 21-25; (2) the requested relief is untethered from any important government interest, as applied in this case, *id.* at 26-27; and (3) the requested relief is not narrowly tailored, *id.* at 28-29. The government does not dispute that if the Court finds the compelled statements to be ideological beliefs or statements of fact that Wynn believes to be false, then its requested relief is unconstitutional.  Instead, it disputes only the latter two arguments.

*First*, the government argues that it satisfies the important government interest standard because forcing Wynn to state he was an agent of the PRC would support FARA's purpose to assist in the "apprais[al] [of agents'] statements and actions."  Opp. at 28 (quoting *Keene*, 481 U.S. at 469).  The government, however, neglects to mention that the D.C. Circuit has interpreted this language to mean that the purpose of FARA "is to permit … evaluation of these activities as they are undertaken," which would not be served in this as-applied challenge.  *McGoff*, 831 F.2d

12

at 1082; *accord Keene*, 481 U.S. at 469 n.15 (FARA is "intended to label information of foreign origin so that hearers and readers are not deceived by the belief that the information comes from a disinterested source.") (quoting *Viereck v. United States*, 318 U.S. 236, 251 (1943) (Black, J., dissenting)) (quoted with approval by Opp. at 23-24).  The government points to cases involving political propaganda targeting the public, but the public was not part of the audience appraising Wynn's speech or activities.  Trying to sweep the public into Wynn's audience, the government relies on Federal Lobbying Act cases, Opp. at 29, but it fails to address the line of cases deeming lobbyist registration statutes unconstitutional when applied to non-professionals like Wynn.  *See* MTD at 26-27.  FARA's purpose to facilitate an audience's ability to evaluate speech has already been served in this case.  *See id.* at 12-13, 19-20, 26.

*Second*, the government argues its requested relief is "precisely tailored" to "compelling necessity," *Riley*, 487 U.S. at 800, because the lesser alternatives of asking about facts (rather than requiring specific affirmations of the government's conclusions about the existence of an agency relationship and political activities taken for or on behalf of the principal) or relying on government speech are "not viable."  Opp. at 26, 30.  This argument is wrong.  The government has spent four years investigating and amassed an enormous record, including Wynn's responses to every question the government chose to ask him.  As he explained, Wynn passed on a message, "received no compensation or benefits," and "was transparent about the circumstances" when speaking with administration officials.  Dkt. 11-3 at 2.  The government has all requested information and is free to state its own conclusions without forcing Wynn to agree.

The government unpersuasively claims that Wynn's less restrictive alternatives are not viable because "[t]he Government has no independent authority" to speak.  Opp. at 31.  The government does not need authority to speak.  The DOJ has a website, social media accounts,

and near-daily press releases or press conferences that are widely covered by the media.

Moreover, the FARA Unit makes semi-annual reports to Congress, which are publicly available

on DOJ's website.  Regardless, the status quo's lack of a law or regulation empowering DOJ to

speak is not an excuse for the fact that the existing DOJ implementation of FARA, including the

forms in Dkt. 11-4, would unconstitutionally compel Wynn's speech.  *See Ashcroft v. ACLU*,

542 U.S. 656, 666, 669-70 (2004) (explaining that "the test does not begin with the status quo of

existing regulations" but instead asks whether there are "plausible, less restrictive alternatives" to

the status quo); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395-96 (1992) (striking down content-

based ordinance because government could pass a content-neutral version); *Gartrell v. Ashcroft*,

191 F. Supp. 2d 23, 39-40 (D.D.C. 2002) (collecting cases and concluding "the government

cannot meet its burden to prove least restrictive means unless it has actually considered and

rejected the efficacy of less restrictive measures before adopting the challenged practice").  If a

less restrictive alternative could be enacted, then the onus is on the government to do so.

## III.   THE COMPLAINT FAILS TO SUFFICIENTLY ALLEGE THAT WYNN ACTED AS AN AGENT OF FOREIGN PRINCIPAL

Under FARA, an "agent" must have (A) a sufficient relationship with a foreign principal,

and (B) engage in political activities in the foreign principal's interests.  The Complaint fails to

sufficiently allege either of these elements.

### A.   The Complaint Fails to Allege That Wynn Had an Agency Relationship with a Foreign Principal

The Complaint does not allege that the PRC or Sun exercised direction, control, or

authority over Wynn.  It alleges that the PRC and Sun made a "request" of Wynn only in the

most precatory, non-authoritative sense of the word, and speculates that Wynn was motivated to

accept this request out of desire to protect his business interests.  Opp. at 6, 35.  The Complaint

does not allege that this desire was rooted in any promise of benefit or threat of punishment by

14

the PRC or Sun.  The government's argument that Wynn could be an "agent of a foreign principal" without agreeing to be subject to any level of control, direction or authority of the foreign principal ignores the statute's structure and would render key terms surplusage.

      **1.**      **The Statute's Residual Clause Must Be Read Consistently with its Other Terms Requiring the Agent to Submit to the Continued Authority or Control of the Principal**

The Complaint can only survive if it sufficiently alleges that Wynn acted as "an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal."  22 U.S.C. § 611(c)(1).  The definition of "agent of a foreign principal" contains a list within a list, requiring a two-step interpretative process.  First, *the residual clause* ("any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal") must be read consistently with the terms that the residual clause joins—"agent," "representative," "employee," and "servant,"—each of which involve an agreed-upon relationship involving control.  Second, *within the residual clause*, "request" must also be read consistently with "at the order" and "under the direction or control."  In arguing that the Complaint is sufficient, the government ignores the first step, which is important context that informs the statute's meaning.

"Agent," "representative," "employee," and "servant" each connote a pre-existing relationship in which an agent and a principal have agreed that the agent will submit to the continued authority of the principal.  This is consistent with the common-law definition of an "agent": "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to so act."  *Restatement (Third) of Agency* § 1.01 (2006); *United States v. Hoskins*, __ F.4th ___, 2022 WL 3330357, at *5 (2d Cir. Aug. 12, 2022) ("The three elements necessary to an agency

relationship are (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking."); *Jenkins v. Strauss*, 931 A.2d 1026, 1033 (D.C. 2007).

The residual clause ("any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal") must be interpreted in a way consistent with the four terms it joins, lest it swallow the entire provision.  *See* MTD at 30-33.  The Supreme Court's interpretation of "any decision or action on any question, matter, cause, suit, proceeding or controversy" in *McDonnell v. United States*, 579 U.S. 550, 565-69 (2016) illustrates how *noscitur a sociis* ("a word is known by the company it keeps") applies here.  In *McDonnell*, the Court observed that the final four listed words "connote a formal exercise of governmental power," *id.* at 568, and therefore concluded that "question," and "matter" must also mean "a formal exercise of governmental power that is similar in nature to a 'cause, suit, proceeding or controversy,' but that does not necessarily fall into one of those prescribed categories."  *Id.* at 569, 574.  As the Court observed in *Yates v. United States*, "where general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."  574 U.S. 528, 545, 549-51 (2015).  Here, "any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal" must also involve an agreed-upon relationship involving control that does not necessarily fall under the terms of "agent," "representative," "employee," and "servant."  Similarly, the term "request" within the residual clause must be interpreted consistently with the other terms of the clause: "at the order" or "under the direction and control"—each of which connotes a mutual understanding that one is serving under another's authority.

The government is simply wrong in claiming that Wynn's interpretation would "effectively eliminate[] the word 'request' as a stand-alone item in the list …."  Opp. at 32.  An agent can agree to be subject to the functional control of a principal in many ways.  He may explicitly agree that the principal can "control" his actions or give him "direction," including in exchange for compensation.  Or he may establish a practice of adhering to "orders" or "requests" from the principal in exchange for some authoritative mechanism of rewarding agreement or punishing refusal.  But deeming mere acquiescence to a precatory request—without establishing any authority similar to an agent, representative, employee or servant—to establish an agency relationship would cause the residual clause to subsume the terms that precede it.  To be sure, every "agent," "representative," "employee," and "servant" acts at the "request" of their superior.  The government's unmoored reading of "request" would render these other statutory terms unnecessary, a far more significant violation of the presumption against surplusage.  *See McDonnell*, 579 U.S. at 569.

## 2. The Government's Arguments for a Broad Interpretation of "Request" Are Without Merit

The government is incorrect that courts have "agreed with [its] reading" that complying with a mere "request" is sufficient.  Opp. at 32.  The government relies on a *per curiam*, out-of-circuit opinion issued forty years ago holding only that the definition of a sufficient request fell "somewhere between a command and a plea."  *See* MTD at 33-35 (addressing *Att'y Gen. v. Irish N. Aid Comm.*, 668 F.2d 159 (2d Cir. 1982) (per curiam) (*INAC*)).  *INAC* considered the totality of the circumstances including whether those requested to act "were identified with specificity by the principal," Opp. at 33, and here, Wynn was identified by Broidy, not by a foreign principal, Opp. at 35 ("Broidy chose [Wynn]….").  Most importantly, while declining to delve deeper into the meaning of "request," *INAC* cited and quoted with approval the testimony of

17

Assistant Attorney General Phillip B. Heymann that forms the most solid available distinction "between a command and a plea":

> For instance, a congressman visits Turkey and during his trip he meets with government officials. The government officials urge the case for foreign policies favorable to Turkey, and he supports these when he returns to Washington. If that is considered a 'request' under the statute, the congressman is an unregistered foreign agent, even though he has taken no orders, is under no one's direction or control, and is not anyone's agent.

668 F.2d at 161 n.6 (quoting Inquiry Into the Matter of Billy Carter and Libya: Hearings Before the Subcomm. to Investigate the Activities of Foreign Governments of the Senate Comm. On the Judiciary, 96th Cong. 701 (1980) (hereinafter, "Heymann Statement")); *see* Heymann Statement at 701 (noting that such "persuasion" or "urging" from a foreign nation was insufficient to create an agency relationship under FARA); *see also* MTD at 34-35.

Although Wynn's opening brief noted the obvious links between the scenario described in Heymann's testimony and the allegations in this case, the government does not attempt to distinguish the testimony. Instead, the government urged the Court to disregard the Heymann Statement and DOJ-OIG's 2016 FARA Unit quotes (which are consistent with the Heymann Statement), in favor of an interpretative guidance that the FARA Unit authored *two years after* initiating contact with Wynn's counsel. *See* MTD at 35 (addressing 2020 guidance). The government is wrong to claim that the FARA Unit's made-for-litigation guidance carries more weight than the Heymann Statement. Opp. at 38; *see Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1136 (D.C. Cir. 2001) (interpretations found in litigation statements in agency briefs do not carry force of law and do not warrant *Chevron* deference).

Regardless of the weight to be accorded to the 2020 guidance, however, both parties agree that it still requires a "relationship between the agent and the foreign principal … that substantially obligates the agent to the foreign principal." Opp. at 38 (quoting Heymann

Statement at 701).  Heymann's testimony is the source of this "substantially obligates" test, which it defines to require a person to act "at the order of a foreign principal, or under the direction or control of a foreign principal."  Heymann Statement at 701; *id.* at 702 ("The test, as I indicated, is whether [the agent] acted at the order of [a foreign principal] or under [its] control.").  The Complaint does not allege that Wynn was substantially obligated to Sun or the PRC, and therefore fails under that test.  It does not matter that the Complaint alleges that Wynn "was motivated by his desire to protect his business interests in the PRC," Compl. ¶ 28—an ill-founded allegation that lacks any support except a businesslike text message clearly attempting to be polite.  Even assuming such an unspoken motivation for the purpose of a motion to dismiss, that unilateral desire would not give Sun or the PRC authority over Wynn necessary to render him their agent for purposes of FARA merely by complying with their request.

None of the other authority relied upon by the government is persuasive.  In *United States v. Rafiekian*, the court interpreted the scope of agency under 18 U.S.C. § 951, not FARA, and its statements about FARA were dicta.  991 F.3d 529, 539-40 (4th Cir. 2021).  In *Attorney General v. Irish People*, the D.C. Circuit held that the district court erred in granting summary judgment that Irish People acted at INAC's "order or request" because although the Irish People received funding from INAC, shared an editor and offices with INAC, and had convergent editorial views, "motivation and intent issues" precluded summary judgment.  796 F.2d 520, 523-24 (D.C. Cir. 1986) (per curiam).  Importantly, the D.C. Circuit cast doubt upon whether a mere request from INAC would be sufficient, instructing that "mere receipt of a bona fide subsidy not subjecting the recipient to the direction or control of the donor does not require the recipient of the subsidy to register as an agent of the donor."  *Id.* at 524.  While *Irish People* did not define

"request," it made clear that FARA requires foreign principal control even in cases where the foreign principal compensates the alleged agent, a factor notably absent here.

## B.     The Government's Opposition Fails to Identify Any Factual Allegations Supporting That Wynn Engaged in Political Activities

The government does not dispute that merely delivering a message on behalf of the PRC without intent to influence the Administration does not constitute "political activities" under the statute.  MTD at 39.  Thus, absent clear factual allegations in the Complaint that Wynn lobbied or intended to lobby Administration officials on the PRC's behalf, the government cannot be permitted to proceed.  This is no mere technicality; requiring the government to allege specific facts establishing Wynn's intent to influence is central to a claim under FARA and required by the statute's plain terms.

The government, nevertheless, fails to identify a single *factual* allegation in the Complaint supporting the claim that Wynn lobbied or otherwise intended to influence the Administration on the PRC's behalf.  None exist.  The Complaint alleges only that Wynn made Administration officials aware of the PRC's request, *i.e.*, that Wynn "*conveyed* the PRC's desire," "*advised*" White House officials about the request, "*stated*" what PRC officials had told him, and "*asked* … about the PRC businessperson's status."  Compl. ¶¶ 22, 25 (emphases added); MTD at 39.  There are no allegations that Wynn lobbied or otherwise intended to influence the Administration on the PRC's behalf, nor any alleged facts from which this conclusion might plausibly be inferred.

The government instead seeks to salvage its deficient pleading with conclusory statements that Wynn engaged in "repeated lobbying."  *See* Opp. at 39.  For example, the government states that Wynn's intent to influence can be inferred from Wynn's text message that "all parties in the White House were fully sensitive to the timing of this issue and the relevant

USA procedural law involved."  Opp. at 41 (citing Compl. ¶ 28).  From Wynn's use of the term

"sensitive," the government insists without explanation that "[Wynn] … wanted to influence

how they thought about and perceived the issue."  *Id.*  But there is nothing reasonable, much less

plausible in this inference; and, of course, it is utterly at odds with the government's own

characterization of Wynn's actions: that he conveyed, advised, stated, and asked.  Simply re-

stating this conclusion falls far short of the government's burden to "provide grounds of [its]

entitlement to relief" with "more than labels and conclusions."  *Bell Atl. v. Twombly*, 550 U.S.

544, 555 (2007) (internal quotations marks and brackets omitted).

Indeed, as is plain from the context, "sensitive" merely meant "having or showing

awareness and understanding, esp. of other people's feelings and needs."  *See* Cambridge

Dictionary, https://dictionary.cambridge.org/us/dictionary/english/sensitive.  That is precisely

what Wynn did here—provide Administration officials with an awareness and understanding of

the PRC's request, a conclusion that is entirely consistent with the Complaint's factual

allegations.  The text message confirms what the government elsewhere repeatedly alleges:

namely, that Wynn was a messenger, nothing more.  Notably, in describing this text earlier in its

Opposition, the government agrees that this is what Wynn's text was communicating to the PRC.

Opp. at 6 (stating that "Sun continued to contact [Wynn] through approximately October 2017, at

which point [Wynn] informed Sun that *he had made U.S. officials aware of the request*, that

[Wynn] was not able to provide any more assistance, and that Sun should stop contacting him.")

(emphasis added)).

In apparent recognition that the Complaint's factual allegations about Wynn's intentions

are deficient, the government instead relies heavily on allegations of what *others* intended.  Opp.

at 40.  There is no dispute that Sun wanted his request to be granted, but his intentions are beside

the point.  As the statute makes clear, it is what *Wynn* intended that counts.  Under FARA, "political activities" only includes those activities "that *the person* … believes will, or that *the person* intends to, in any way influence" a relevant party.  22 U.S.C. § 611(o).  In an attempt to impute the PRC's and Sun's intent to Wynn, the government argues Wynn "was part of a broader effort to effectuate the return of a PRC businessperson," and that Wynn acted "as part of this recruitment effort."  Opp. at 39, 40.  But this argument founders on the plain terms of the statute and the factual allegations in the Complaint, which do not allege a conspiracy, much less articulate any allegations that Wynn agreed to be part of a "broader effort" beyond merely delivering the PRC's message.

Finally, the government seeks to excuse the defects in its pleading by complaining "that FARA affords the Government no power to issue subpoenas or otherwise compel [discovery]," and thus that it must "rely on what information it is able to obtain voluntarily from witnesses." Opp. at 42.  The government argues, therefore, that the "Court should not dismiss the Complaint where the Government has not yet had the opportunity to gather this factual information and where such information is material to the issues raised in the Defendant's motion."  *Id.*  The government's argument is puzzling, because it has and routinely exercises the power to compel the production of documents or witnesses relating to FARA through the criminal investigatory process.  *See, e.g.*, Robert Mueller, 1 *Report on the Investigation Into Russian Interference in the 2016 Presidential Election* 181-83 (Mar. 2019) (describing FARA portion of investigation and resulting charges); DOJ, *Recent FARA Cases*, https://www.justice.gov/nsd-fara/recent-cases (describing over a dozen recent cases).  The government did so here, compelling testimony and documents from Wynn—now possessed by the DOJ attorneys in this matter—and many others, leading to several plea agreements and criminal charges.  *See* MTD at 5 (listing cases).

Moreover, the government distorts the role of discovery and eviscerates the critical purpose served by Rule 12(b)(6).  As courts have explained, "[e]xcept in certain limited circumstances … discovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has [already] stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim[.]"  *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *McManus*, 355 F. Supp. 3d at 298 ("The mere, ever-present possibility that some unknown and unanticipated new facts will emerge to prop up the non-moving party's case is no reason to deny the [motion].").  The government should not be permitted to engage in a fishing expedition through discovery to find a viable claim that it cannot support through good-faith allegations.

## C.     The Government Should Not Be Granted Leave to Amend

The government also requests that—if the Complaint is dismissed—it be granted leave to amend.  Opp. at 41.  Because the time for amending the Complaint as a matter of course under Fed. R. Civ. P. 15(a)(1) has passed, the government must obtain leave of Court to amend. "When evaluating whether to grant leave to amend … , the Court must consider these factors: (1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint."  *Habliston v. FINRA Dispute Resol., Inc.*, 251 F. Supp. 3d 240, 244 (D.D.C. 2017).  The government has not met its burden that such leave should be granted.

As an initial matter, the government has neither submitted a proposed amended complaint nor disclosed what additional factual allegations it would include if leave were granted.  Without such information, the Court cannot evaluate whether to grant leave to amend.  *See Gavin v. Dep't of Air Force*, 314 F. Supp. 3d 297, 304-05 (D.D.C. 2018).  In any event, an amendment would be

futile.  The government has had more than four years to collect any facts necessary to support its claim, with the cooperation and testimony from Wynn, and has enjoyed unfettered access to the individuals with whom Wynn interacted, who could furnish facts relevant to his intent.  *See In re Dreier LLP*, 453 B.R. 499, 518 (Bankr. S.D.N.Y. 2011) (holding that "leave to replead these claims would not be productive" because plaintiff already had two years of research and preparation before initial complaint).  In short, the problem with the Complaint is not that there are more facts to allege, but that the facts that the government has alleged—presumably in good faith—do not meet the requirements of a FARA claim.  Allowing the government to try to recast those facts in a different light would be unfair, prejudicial, and contrary to the interests of justice.

If the government possessed additional facts to support its FARA claim but did not include them in its Complaint for strategic or other reasons, the Court should deny leave to amend for bad faith and delay.  *Kent v. Bledsoe*, No. 09-cv-1701, 2010 WL 771583, at *3 (M.D. Pa. Mar. 2, 2010) (denying leave to amend "due to bad faith and a dilatory motive" where the plaintiff was aware of claims but did not include them in the original complaint).

## IV.   THE COURT MAY CONSIDER DOCUMENTS INCORPORATED IN THE COMPLAINT

The Court may properly consider Wynn's exhibits as explained in the authorities cited in MTD at 4 n.1 and unrebutted by the government.  *See Louis v. Hagel*, 221 F. Supp. 3d 40, 43 n.4 (D.D.C. 2016) (holding that letter from defendant could be considered because it was referenced in the complaint and the authenticity of the document was undisputed); *Slate v. Pub. Def. Serv. for D.C.*, 31 F. Supp. 3d 277, 287-88 (D.D.C. 2014) (collecting cases and holding that the court would consider a letter referenced in the complaint and a plaintiff-drafted document).  Wynn's exhibits are incorporated by the Complaint and properly before the Court in deciding Wynn's constitutional arguments (Section II)—the only arguments that implicate the exhibits.  What is

24

less clear is whether the Court must consider the government's contrary argument, which was not raised in the government's timely filed brief (Dkt. 13) but was only raised after the Court ordered the government to refile a brief that complied with Local Rule 5.1(d).  Local Rule 5.1(g) specifies that a party must file a "corrected" pleading, but it does not grant a party permission to make substantive changes or add new arguments, as the government liberally did here.  In the alternative, the Court may convert the Motion to Dismiss to one, in that part, for summary judgment.  *See Sarfati v. Antigua & Barbuda*, 923 F. Supp. 2d 72, 74-75 (D.D.C. 2013).

## <u>CONCLUSION</u>

For the foregoing reasons and those stated in Dkt. 11-1, Wynn respectfully requests that the Court dismiss the Complaint with prejudice.

Respectfully submitted,

/s/ _____
Reid H. Weingarten (D.C. Bar No. 365893)
Brian M. Heberlig (D.C. Bar No. 455381)
Nicholas P. Silverman (D.C. Bar No. 1014377)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC  20036
Tel: (202) 429-3000
Fax: (202) 429-3902
rweingarten@steptoe.com
bheberlig@steptoe.com
nsilverman@steptoe.com

/s/ _____
Robert D. Luskin (D.C. Bar No. 293621)
Leo R. Tsao (*pro hac vice*)
PAUL HASTINGS LLP
2050 M Street, N.W.
Washington, DC  20036
Tel: (202) 551-1700
Fax: (202) 551-0410
robertluskin@paulhastings.com
leotsao@paulhastings.com

Dated: August 29, 2022          *Counsel for Defendant Stephen A. Wynn*