APPEAL,CLOSED,TYPE–E

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: <u>1:22–cv–01372–JEB</u>
# *Internal Use Only*

| | |
|---|---|
| ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA v. WYNN | Date Filed: 05/17/2022 |
| Assigned to: Judge James E. Boasberg | Date Terminated: 10/12/2022 |
| Cause: 28:2201 Injunction | Jury Demand: None |
| | Nature of Suit: 890 Other Statutory Actions |
| | Jurisdiction: U.S. Government Plaintiff |

**Plaintiff**

**ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA**     represented by     **Emma Dinan Ellenrieder**
U.S. DEPARTMENT OF JUSTICE
National Security Division
950 Pennsylvania Avenue NW
Washington, DC 20530
202–514–0203
Email: <u>emma.ellenrieder@usdoj.gov</u>
*ATTORNEY TO BE NOTICED*

**Nathan Michael Swinton**
DOJ–NSD
Counterintelligence and Export Control Section
950 Pennsylvania Ave NW
Room 7700d
Washington, DC 20530
202–353–0267
Email: <u>Nathan.Swinton@usdoj.gov</u>
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**STEPHEN A. WYNN**     represented by     **Reid Henry Weingarten**
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave NW
Washington, DC 20036
(202) 429–6238
Fax: (202) 429–3902
Email: <u>rweingarten@steptoe.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert David Luskin**
PAUL HASTINGS LLP

2050 M Street NW
Washington, DC 20036
202–551–1966
Email: robertluskin@paulhastings.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian Matthew Heberlig**
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429–3000
Fax: (202) 429–3902
Email: bheberlig@steptoe.com
*ATTORNEY TO BE NOTICED*

**Nicholas Paul Silverman**
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036–1795
202–429–8096
Email: nsilverman@steptoe.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 05/17/2022 | 1 | | COMPLAINT *for Declaratory and Injunctive Relief* against STEPHEN A WYNN (Fee Status:Filing Fee Waived) filed by ATTORNEY GENERAL UNITED STATES OF AMERICA. (Attachments: # 1 Civil Cover Sheet)(Swinton, Nathan) (Attachment 1 replaced 5/18/2022) (znmg). Modified on 5/18/2022 to replace fillable civil cover sheet (znmg). (Entered: 05/17/2022) |
| 05/17/2022 | 2 | | WAIVER OF SERVICE. STEPHEN A WYNN waiver sent on 5/17/2022, answer due 7/16/2022. (Swinton, Nathan) (Entered: 05/17/2022) |
| 05/18/2022 | | | NOTICE OF ERROR re 1 Complaint; emailed to nathan.m.swinton@usdoj.gov, cc'd 0 associated attorneys –– The PDF file you docketed contained errors: 1. Noncompliance with LCvR 5.1(c). Please file an errata correcting the initiating pleading to include the name & full residence address of each party using the event Errata., 2. Blank or missing coversheet. Please use the cover sheet at https://www.dcd.uscourts.gov/new–case–forms & file using the event Civil Cover Sheet., 3. **COMPLIANCE DEADLINE is by close of business today. This case will not proceed any further until all errors are satisfied.** (znmg, ) (Entered: 05/18/2022) |
| 05/19/2022 | 3 | | ERRATA by ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA re 1 Complaint, filed by ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA. (Attachments: # 1 Civil Cover Sheet)(Swinton, Nathan) (Entered: 05/19/2022) |
| 05/19/2022 | 4 | | SEALED MOTION filed by ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA (Attachments: # 1 Exhibit)(Swinton, Nathan) (Entered: |

| | | | |
|---|---|---|---|
| | | | 05/19/2022) |
| 05/20/2022 | | | Case Assigned to Judge James E. Boasberg. (znmg) (Entered: 05/20/2022) |
| 05/20/2022 | | | SUMMONS Not Issued as to STEPHEN A. WYNN (znmg) (Entered: 05/20/2022) |
| 05/23/2022 | 5 | | NOTICE of Appearance by Reid Henry Weingarten on behalf of STEPHEN A. WYNN (Weingarten, Reid) (Entered: 05/23/2022) |
| 05/23/2022 | 6 | | NOTICE of Appearance by Brian Matthew Heberlig on behalf of STEPHEN A. WYNN (Heberlig, Brian) (Entered: 05/23/2022) |
| 05/23/2022 | 7 | | NOTICE of Appearance by Emma Dinan Ellenrieder on behalf of ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA (Ellenrieder, Emma) (Entered: 05/23/2022) |
| 06/06/2022 | 8 | | NOTICE of Appearance by Nicholas Paul Silverman on behalf of STEPHEN A. WYNN (Silverman, Nicholas) (Entered: 06/06/2022) |
| 07/08/2022 | 9 | | Joint MOTION for Briefing Schedule *& Partial Stay of Discovery* by STEPHEN A. WYNN. (Attachments: # 1 Text of Proposed Order)(Heberlig, Brian). Added MOTION to Stay on 7/8/2022 (znmw). (Entered: 07/08/2022) |
| 07/08/2022 | | | MINUTE ORDER GRANTING Joint 9 Motion for Briefing Schedule. The Court ORDERS that: 1) Defendant shall file his Motion to Dismiss by July 18, 2022; 2) Plaintiff shall file its Response by August 15, 2022; 3) Defendant shall file his Reply by August 29, 2022; 4) Discovery shall be stayed pending resolution of Defendant's Motion to Dismiss and all other deadlines shall be held in abeyance, except that 5) The parties will hold their Rule 26(f) conference on September 6, 2022; 6) Initial disclosures shall be due by September 27, 2022; and 7) The parties shall file their Rule 26(f) report by September 27, 2022. So ORDERED by Judge James E. Boasberg on 7/8/2022. (lcjeb3) (Entered: 07/08/2022) |
| 07/08/2022 | | | Set/Reset Deadlines: Motions due by 7/18/2022. Responses due by 8/15/2022 Replies due by 8/29/2022. Initial Disclosure due by 9/27/2022. Rule 26 Meeting Report due by 9/27/2022. (nbn) (Entered: 07/11/2022) |
| 07/15/2022 | 10 | | NOTICE of Appearance by Robert David Luskin on behalf of STEPHEN A. WYNN (Luskin, Robert) (Entered: 07/15/2022) |
| 07/18/2022 | 11 | | MOTION to Dismiss *Complaint* by STEPHEN A. WYNN. (Attachments: # 1 Memorandum in Support, # 2 Declaration, # 3 Exhibit A, # 4 Exhibit B, # 5 Text of Proposed Order)(Heberlig, Brian) (Entered: 07/18/2022) |
| 07/19/2022 | 12 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Leo R. Tsao, Filing fee $ 100, receipt number ADCDC–9381097. Fee Status: Fee Paid. by STEPHEN A. WYNN. (Attachments: # 1 Declaration of Leo R. Tsao, # 2 Certificate of Good Standing for Leo R. Tsao)(Luskin, Robert) (Entered: 07/19/2022) |
| 07/19/2022 | | | MINUTE ORDER GRANTING 12 Motion for Admission *Pro Hac Vice* of LEO R. TSAO. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. So ORDERED by Judge James E. Boasberg on 07/19/2022. (lcjeb1) (Entered: |

| | | | |
|---|---|---|---|
| | | | 07/19/2022) |
| 08/15/2022 | 13 | | STRICKEN PURSUANT TO THE MINUTE ORDER FILED ON 8/16/2022.....Memorandum in opposition to re 11 Motion to Dismiss filed by ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA. (Swinton, Nathan) Modified on 8/16/2022 (nbn). (Entered: 08/15/2022) |
| 08/16/2022 | | | MINUTE ORDER: The Court ORDERS that Plaintiff's 13 Memorandum is STRICKEN for violating the Local Rule on excessive footnotes; the footnotes here, furthermore, appear as an attempt to circumvent page limits. Plaintiff shall file by August 17, 2022, a compliant Memorandum containing no more than 10 footnotes with no more than 50 aggregate lines of text. So ORDERED by Judge James E. Boasberg on 08/16/2022. (lcjeb3) (Entered: 08/16/2022) |
| 08/16/2022 | | | Set/Reset Deadlines: Plaintiff shall file by August 17, 2022, a compliant Memorandum containing no more than 10 footnotes with no more than 50 aggregate lines of text. (nbn) (Entered: 08/16/2022) |
| 08/17/2022 | 14 | | RESPONSE re 11 MOTION to Dismiss *Complaint* filed by ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA. (Swinton, Nathan) (Entered: 08/17/2022) |
| 08/29/2022 | 15 | | REPLY to opposition to motion re 11 MOTION to Dismiss *Complaint* filed by STEPHEN A. WYNN. (Heberlig, Brian) (Entered: 08/29/2022) |
| 09/14/2022 | 16 | | NOTICE OF SUPPLEMENTAL AUTHORITY by ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA (Attachments: # 1 Exhibit Omnibus Memorandum Opinion and Order in United States v. Michel)(Swinton, Nathan) (Entered: 09/14/2022) |
| 09/25/2022 | 17 | | Joint MOTION for Protective Order *and Federal Rule of Evidence 502(d) Order* by ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order Stipulated Protective Order, # 2 Text of Proposed Order Federal Rule of Evidence 502(d) Order)(Swinton, Nathan) (Entered: 09/25/2022) |
| 09/26/2022 | 18 | | ORDER: The Court ORDERS that the Joint 17 Motion for Protective Order and Federal Rule of Evidence 502(d) Order is GRANTED, and the signed Protective Order and 502(d) Orders are attached. Signed by Judge James E. Boasberg on 9/26/2022. (lcjeb2) (Entered: 09/26/2022) |
| 09/27/2022 | 19 | | MEET AND CONFER STATEMENT. (Attachments: # 1 Text of Proposed Order Plaintiff's proposed scheduling order, # 2 Text of Proposed Order Defendant's proposed scheduling order)(Swinton, Nathan) (Entered: 09/27/2022) |
| 10/12/2022 | 20 | | ORDER: The Court ORDERS that: (1) Defendant's 11 Motion to Dismiss is GRANTED; and (2) The case is DISMISSED WITHOUT PREJUDICE. Signed by Judge James E. Boasberg on 10/12/2022. (lcjeb2) (Entered: 10/12/2022) |
| 10/12/2022 | 21 | | MEMORANDUM OPINION re 20 Order on Motion to Dismiss. Signed by Judge James E. Boasberg on 10/12/2022. (lcjeb2) (Entered: 10/12/2022) |
| 12/09/2022 | 22 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 20 Order on Motion to Dismiss by ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA. Fee Status: No Fee Paid. Parties have been notified. (Swinton, |

| | | | Nathan) (Entered: 12/09/2022) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| STEPHEN A. WYNN, | ) ) |
| Defendant. | ) ) |

Civil Action No. 1:22-cv-1372-JEB

## NOTICE OF APPEAL

Notice is hereby given this 9th day of December, 2022, that the Attorney General of the

United States of America hereby appeals to the United States Court of Appeals for the District of

Columbia from the judgment of this Court entered on the 12th day of October, 2022, granting

Defendant's Motion to Dismiss.  *See* Order, ECF No. 20.

Date:  December 9, 2022        /s/ *Nathan Michael Swinton*
                 Nathan Michael Swinton (NY Bar)
                 Emma Dinan Ellenrieder (D.C. Bar No. 1015108)
                 U.S. DEPARTMENT OF JUSTICE
                 National Security Division
                 Counterintelligence and Export Control Section
                 950 Pennsylvania Avenue NW
                 Room 7700D
                 Washington, DC 20530
                 Telephone: (202) 353-0267
                 Telephone: (202) 514-0203
                 Nathan.Swinton@usdoj.gov
                 Emma.Ellenrieder@usdoj.gov

                 *Counsel for Plaintiff*

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,

      Plaintiff,

          v.

STEPHEN A. WYNN,

      Defendant.

Civil Action No. 22-1372 (JEB)

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, the Court

ORDERS that:

    1.  Defendant's Motion to Dismiss is GRANTED; and

    2.  The case is DISMISSED WITHOUT PREJUDICE.


                    /s/ James E. Boasberg
                    JAMES E. BOASBERG
                    United States District Judge

Date:  October 12, 2022

1

7

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,** | |
|     **Plaintiff,** | |
|       **v.** | **Civil Action No. 22-1372 (JEB)** |
| **STEPHEN A. WYNN,** | |
|     **Defendant.** | |

## MEMORANDUM OPINION

While many people may know Defendant Stephen A. Wynn as a developer who turned up the wattage in Las Vegas with his high-end resorts and casinos, the Government here contends that he has moonlighted in another sphere as well: as an agent of the People's Republic of China. In this suit, the Attorney General seeks an injunction forcing him to register as such under the Foreign Agents Registration Act (FARA).

During five months in 2017, Wynn and the Government agree that he had numerous meetings and conversations with members of the Trump Administration regarding the PRC's interest in the return of an unnamed Chinese businessperson, who fled China in 2014 and sought political asylum in the United States. The Department of Justice, alleging that Wynn traded these lobbying efforts for favorable treatment of his casino business in Macau, repeatedly advised him over the course of four years that he was obligated to register as a foreign agent under FARA. Wynn, who contests this obligation and has refused to so register, now moves to dismiss this suit, arguing that the Government cannot compel him to register after his alleged

agency relationship terminated. Because the Court agrees with him that binding Circuit precedent forecloses the Government's efforts here, it will grant the Motion.

**I.      Background**

The Court begins with a brief overview of the purposes and structure of FARA and then turns to the factual and procedural history of the case.

A.  Foreign Agents Registration Act

FARA is a disclosure statute. It requires any person engaging in certain political, financial, or public-relations activities on behalf of a foreign principal to register with the Attorney General and to make periodic public disclosures about her relationship with the foreign principal and the activities she undertakes in the United States on its behalf. See generally 22 U.S.C. §§ 611–12. The purpose of these disclosures is to "prevent covert influence over U.S. policy by foreign principals . . . [by] ensur[ing] that the public is informed of the true source or sponsor behind the information being disseminated for its consideration." United States v. Craig, 401 F. Supp. 3d 49, 54 (D.D.C. 2019); see also 22 U.S.C. § 611 Note on Policy and Purpose of Subchapter.

The scope of persons subject to FARA is broad. Section 611 of the Act defines an "agent of a foreign principal" to mean anyone "who directly or through any other person . . . engages within the United States in political activities for or in the interests of such foreign principal" or "represents the interests of such foreign principal before any agency or official of the Government of the United States." 22 U.S.C. § 611(c)(1). The Act then defines "political activities" to mean any activity that is intended to or could "influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United

2

States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party." Id. § 611(o). FARA's definition of "foreign principal" is similarly broad, encompassing foreign governments, foreign political parties, and other combinations of foreign persons or groups doing business outside of the United States. Id. § 611(b). Under these definitions, nearly anyone who represents the political or public-relations interests of a foreign principal in the United States is covered under FARA.

When an agent of a foreign principal undertakes any of these covered activities, she becomes subject to the statute's reporting requirements. Id. § 612. Under the terms of § 612(a), an agent must submit a registration statement to the Attorney General within ten days of the start of the agency relationship. That statement must include certain required disclosures, including, *inter alia*, the "registrant's name and address(es)," the registrant's nationality, a "comprehensive statement of the nature of [the] registrant's business," and the details of any written or oral agreements between the registrant and her foreign principal. Id. § 612(a)(1)–(11). After initial filing, agents must then file supplements at six-month intervals. Id. § 612(b). Section 615 further requires that registered agents "keep and preserve while [they are] an agent of a foreign principal such books of account and other records" as the Attorney General's regulations specify.

As will become relevant later, violations of FARA may lead to both criminal and civil sanctions. Individuals who willfully violate the registration requirements or any other provision of FARA are subject to criminal prosecution, id. § 618(a), and § 618(e) specifically makes failure to file the required registration statements a continuing offense. The Attorney General may also bring a civil suit for appropriate injunctive relief, including seeking "an order requiring compliance with any appropriate provision" of FARA. Id. § 618(f).

B.  Underline{Factual Background}

Taking the facts alleged in the Complaint as true — as the Court must at this stage, see

Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) — efforts to enlist

Wynn as an agent of the Chinese government began with a May 2017 meeting that included an

unusual cast of characters: a former RNC finance chair (Elliott Broidy), a businessperson (Nickie

Lum Davis), and a member of the hit 1990s hip-hop group The Fugees (Prakazrel Michel).  See

ECF No. 3 (Compl.), ¶ 16.  That meeting, coordinated by foreign national Low Take Jho,

involved a request from Sun Lijun, the former Chinese Vice Minister for Public Security, for

help lobbying then-President Trump and his Administration on behalf of the People's Republic

of China.  Id.  Perhaps embracing The Fugees' famous line — "ready or not, here I come, you

can't hide," The Fugees, Ready or Not, on The Score (Ruffhouse Records 1996) — the PRC

sought to have the Trump Administration cancel the visa of and remove from the United States

an unnamed Chinese businessperson whom the PRC had charged with corruption.  The Chinese

businessperson, perhaps understanding that "jail bars ain't golden gates," id., had fled China in

2014, seeking political asylum in the United States.  See Compl., ¶ 16.

Defendant entered the picture in June 2017, following that initial meeting, when Broidy

approached him on behalf of Sun to elicit his help in the PRC's lobbying effort.  Id., ¶ 17.  At

that time, Wynn was acting as the latest RNC finance chair, and, according to the Complaint,

Broidy "believed that [Wynn's] RNC experience, combined with [his] business dealings in the

PRC and friendship with then-President Trump, would be helpful in getting access to Trump

Administration officials."  Id.  Broidy explained to Defendant that the Chinese businessperson

was a "criminal wanted by the PRC who was hiding in the United States, that the PRC wanted

him arrested, and that his visa was due to expire soon."  Id., ¶ 18.  Specifically, the PRC wanted

4

Wynn to lobby the Trump Administration to deny his upcoming visa-renewal application and to place him on the No Fly List.  Id., ¶ 21.  Broidy then provided Defendant with the Chinese businessperson's "passport photos, an Interpol red notice, and links to various news articles about [him]."  Id., ¶ 19.

After Broidy softened the ground, Sun began communicating with Wynn directly, at which point Defendant "agreed to raise the matter with then-President Trump and Trump Administration officials."  Id., ¶ 20.  At a dinner on June 27, 2017, Wynn made good on that promise.  There, Defendant "conveyed to then-President Trump the PRC's desire to have the PRC national removed from the United States and provided the PRC national's passport photos to then-President Trump's secretary."  Id., ¶ 22.  Over the rest of the summer, Wynn and Sun kept in touch by phone, with Sun reiterating the importance of the United States' not renewing the visa of the Chinese businessperson, id., ¶ 23, and Defendant organizing further meetings with White House and National Security Council officials, as well as with the then-President himself.  Id., ¶ 25.

Around this same time, Defendant's casino business in Macau, a special administrative region of the PRC, also entered the conversation.  Id., ¶ 23.  According to the Complaint, Wynn's lobbying campaign — which was sandwiched between a 2016 decision by the Macau government to significantly limit the number of gaming tables at his casino and an upcoming license renegotiation for those same casinos in 2019, id., ¶ 29 — was motivated all along "by his desire to protect his business interests in the PRC."  Id., ¶ 28.  By October 2017, when it became evident that the PRC's lobbying campaign had failed to elicit the removal of the PRC national and that Wynn could do no more to help, he "gracefully" exited his role as agent, id., ¶ 27, admitting to Sun that he had "exhausted the advantages of [his] position," but that he was "of

5

course . . . anxious to help" if an opportunity arose in the future, and that he "remain[ed] grateful for the privilege of being part of the Macau and PRC business community." Id., ¶ 28.

## C. Procedural Background

Nearly a year after the PRC's lobbying campaign began, the Department of Justice advised Wynn that it believed he was obligated to register under FARA as an agent of Sun and the PRC, giving him thirty days to effect the registration. Id., ¶ 37. Wynn, through counsel, disputed this obligation, contending to DOJ that he did not meet the statutory definition to be considered an "agent" of either Sun or the PRC, and that none of his actions was taken "in the interests" of Sun or the PRC. See ECF No. 11-3 (Wynn Letter); 22 U.S.C. § 611(c)(1). For the next four years, DOJ and Wynn traded letters, with the Justice Department continuing to insist that he was obligated to register under FARA and noting that its "further investigation into the matter had [only] strengthened" this conclusion. See Compl., ¶ 37. Finally, on April 13, 2022, DOJ reiterated this mandate one final time and gave Wynn thirty days to register. Id. When that request bore no fruit, the Attorney General filed this suit, seeking a permanent injunction under FARA § 612(f) requiring Defendant to register as an agent for the period where he took actions at the request of Sun and on behalf of the PRC. Id., ¶¶ 39–42. This is the first affirmative civil suit under FARA in more than three decades. See Off. of Pub. Affs., Justice Department Sues to Compel a U.S. Businessperson to Register Under the Foreign Agents Registration Act, U.S. Dep't of Just. (May 17, 2022), https://bit.ly/3CjjhFW.

Meanwhile, for their part in the lobbying campaign, Broidy and Davis — each of whom was present at the initial meeting organized by Low in May 2017 — have since pled guilty to counts related to criminal violations of FARA. See United States v. Broidy, No. 20-210 (D.D.C. Oct. 20, 2020); United States v. Davis, No. 20-68 (D. Hawaii). Michel awaits trial on an

6

indictment that includes multiple counts related to FARA violations.  See United States v. Michel, No. 19-148 (D.D.C.).  DOJ, however, has not initiated a criminal prosecution against Wynn for his 2017 activities.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief may be granted.  In evaluating such a motion to dismiss, courts must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570) — that is, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  The court need not accept as true, then, "a legal conclusion couched as a factual allegation," Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)), nor "inferences . . . unsupported by the facts set out in the complaint."  Id. (quoting Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)) (internal quotation marks omitted).  And it may consider not only "the facts alleged in the complaint," but also "any documents either attached to or incorporated in the complaint[,] and matters of which [courts] may take judicial notice."  Equal Employment Opportunity Commission v. St. Francis Xavier Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997).

7

## III.    Analysis

Although Defendant raises a number of meaty constitutional issues, he principally argues that the Court need look no further than the D.C. Circuit's opinion in United States v. McGoff, 831 F.2d 1071 (D.C. Cir. 1987). He contends that the Court of Appeals there interpreted FARA's § 612(a) registration obligation to expire upon the termination of an agency relationship. Because both parties agree that any such relationship between Wynn and the Chinese government ended in October 2017, Defendant's Motion maintains that he is no longer required to file a registration statement and cannot be compelled to do so. The Government disagrees, arguing that McGoff does not preclude the Attorney General from pursuing civil enforcement to compel compliance with the statute's reporting requirements, even after an agency relationship has terminated. Although the issue is close, the Court believes that McGoff forecloses the Government's interpretation of the statute and requires dismissal of the suit. The Court will thus do so without ever considering whether Wynn was a PRC agent or not.

### A.    McGoff's Interpretation of FARA

As McGoff's holding controls here, a close examination of that case is necessary. The D.C. Circuit there considered the criminal prosecution of John P. McGoff for neglecting to register as an agent of the government of South Africa. The Government alleged that McGoff had acted as an agent from 1974 through 1979 and charged him with failure to register under FARA § 612(a) and § 618(e), which makes such failure a continuing offense. Id. at 1072. The Government did not learn of this relationship until 1979 and filed its criminal Information in 1986, seven years after the alleged agency relationship ended. Id. McGoff thus raised the five-year statute of limitations as an affirmative defense. Id. at 1073; see 18 U.S.C. § 3282 (general statute of limitations for non-capital offenses). Because the parties recognized that the question

8

of when the statute of limitations began to run was potentially dispositive of the case, they sought to resolve it at the outset. McGoff, 831 F.2d at 1073. They therefore stipulated to the material facts not in dispute, including that McGoff's alleged agency activities concluded in 1979 and never resumed, and that he never effected registration under FARA. Id. The district court held that the statute of limitations began to run from the last day an individual acts as an agent for a foreign principal and thus required dismissal. The Government appealed to the D.C. Circuit. Id. The only question before that court thus was: "[W]hen did the statute of limitations for failure to file under FARA begin to run?" Id. Is it the last day a person acts on behalf of a foreign principal, or does it never start running as long as the person has not registered?

The D.C. Circuit concluded that the former was the correct interpretation. Id. at 1071. To reach that conclusion, it began with FARA § 618(e), which provides that "[f]ailure to file any such registration statement . . . as is required by either section 612(a) or section 612(b) . . . shall be considered a continuing offense for as long as such failure exists." The court then reasoned that because the "statute of limitations as to prosecutions for continuing offenses runs from the last day of the continuing offense," it was "necessary" to "identify with specificity" when that offense is "complete." Id. at 1079. As the offense was a violation of § 612(a)'s registration requirement, the court determined that "the continuing offense terminates when the section 612(a) obligation to file expires." Id. at 1082.

When does that occur? To begin, FARA's § 612(a) registration requirement prohibits any person from "act[ing] as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement and supplements thereto." Central to the question teed up in McGoff, however, was the second half of § 612(a), which attempts to clarify

9

the scope of that registration obligation. The operative language of that portion of § 612(a) is as follows:

> The obligation of an agent of a foreign principal to file a registration statement shall, after the tenth day of his becoming such agent, continue from day to day, and <u>termination of such status shall not relieve such agent from his obligation to file a registration statement for the period during which he was an agent of a foreign principal</u>.

22 U.S.C. § 612(a) (emphasis added). As the court in <u>McGoff</u> recognized, the underlined language — which was added to § 612(a) in a pair of amendments in 1950 and 1966, <u>McGoff</u>, 831 F.2d at 1090 n.29 — is amenable to two interpretations, depending on how one reads the concluding clause, "for the period during which he was an agent of a foreign principal." Specifically, it hinges on what that clause modifies. <u>See id.</u> at 1100 (Bork, J., dissenting). Neither reading is entirely satisfactory, and both create undesirable issues of surplusage and ambiguity that cannot be fully resolved on the text alone. The Court nonetheless plunges in.

Under what this Court believes is the more sensible reading, which is unfortunately the one embraced by the <u>McGoff</u> dissent, the concluding clause modifies "registration statement." In other words, imagine that the word "for" in this clause is replaced by the word "covering." <u>Id.</u> (Bork, J., dissenting) (interpreting "for" in this way). So rewritten, the provision would read: termination of agency status shall not relieve an agent "from his obligation to file a registration statement <u>covering</u> the period during which he was an agent of a foreign principal." The justification for the inclusion of the concluding clause under this reading would be to describe the content of the registration statement. That is, it would clarify that, although registration as an agent is retroactively required even after the termination of an agency relationship, the registration statements that a former agent needed to file would have to report information only from those prior periods during which he was acting on behalf of a foreign principal, as opposed

10

to indefinitely into the future. The existence of that concluding clause would thus "indicate Congress' rejection" of an alternative interpretation of the requirement that would "amount to the surveillance of the perfectly legal activities of now-ordinary Americans who were formerly agents . . . [by] restrict[ing] the temporal reach of registration statements to the period during which the agent was an agent." Id. at 1100.

The benefit of this interpretation is that it comports with the rule of the last antecedent and thus is the "more natural" reading of the text. Id. at 1083; see id. at 1100 (Bork, J., dissenting); cf. Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 20 (1st ed. 2012) (discussing related "nearest-reasonable-referent canon" of construction, which provides that "[w]hen the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent"). A critic of this interpretation, however, could argue that FARA raises no ambiguity about what period a "registration statement" could refer to because such a statement could logically "relate to no period other than 'the period during which' the individual acted as an agent." McGoff, 831 F.2d at 1083. If that were the case, then the final clause would amount to pure surplusage. Id.; see Scalia & Garner, supra, § 26 (discussing the "surplusage canon" of construction, which provides that "[i]f possible, every word and every provision is to be given effect . . . . None should be ignored. None should be given an interpretation that causes it . . . to have no consequence").

In any event, Judge Bork's reading garnered only his vote. The majority opinion, which this Court is bound by, offers an alternative interpretation, which reads the concluding clause as modifying instead the word "obligation." 831 F.2d at 1083; id. at 1101 (Bork, J., dissenting). Rewritten in this way, the provision would read: termination of agency status shall not relieve an

11

agent "from his obligation for the period during which he was an agent of a foreign principal[] to file a registration statement." Id. at 1101 (Bork, J., dissenting) (restyling the statutory language in this way). Under this reading, the final clause of § 612(a) serves an entirely different purpose. Now, rather than specifying what period the registration statement should cover, it explains that termination of an agency relationship does not retroactively excuse that agent's prior obligation to register under FARA. In other words, the concluding clause "ensure[s] that termination of the agency does not provide an affirmative defense for failure to file during the period that one is an agent," Id. at 1083, and means that the Government may still prosecute an individual for failure to register until the statute of limitations expires. Id. at 1101 (Bork, J., dissenting).

But this reading creates its own challenges. First, it imputes to Congress an intent to use the amendments to § 612(a) to solve a problem that only arises from what the dissent contends would be a highly implausible reading of the provision prior to its amendment. That reading requires one to suppose that, absent the language added in the 1950 and 1966 amendments, the statute would have been interpreted to mean that an agent's duty "to file a registration statement . . . might be somehow retroactively excused . . . immediately upon termination of the agency relationship" for purposes of criminal liability. Id. "No criminal statute works this way." Id. But even if this was the true goal of Congress, as the majority insisted the legislative history demonstrates, see id. at 1084–99, it goes about solving that issue in an odd manner. Surely Congress could have amended § 612(a) by simply adding the phrase "termination of such status shall not relieve such agent from his obligation to file a registration statement" without the concluding clause, which both creates the issue of an ambiguous referent and does not seem strictly necessary to ensure that § 612(a) is read in the way the majority desires.

12

Despite these drawbacks, after examining the (admittedly ambiguous) statutory text and legislative history, the court concluded that this was the most appropriate interpretation, holding that the § 612(a) "obligation to file expires when the agent ceases activities on behalf of the foreign principal."  Id.  So holding, it disagreed with the Government's proposed interpretation, which would have extended McGoff's obligation to register even after his agency relationship had ended and would have, in the majority's view, effectively eliminated the statute of limitations.  Id. at 1093.  The Circuit thus upheld the district court's dismissal.

### B.  McGoff's Applicability

So where does that leave us?  No matter which of the above interpretations seems more sensible to this Court — which by now should be no mystery to the reader — it is bound by the majority's decision.  Under that interpretation of § 612(a), Wynn's obligation to file a registration statement has years since passed, and the Government cannot now compel him to register, which is the only relief it seeks here.  The Government could still attempt to impose criminal sanctions on him so long as he remains within the statute of limitations.  See McGoff, 831 F.2d at 1094 n.32.  It nevertheless rejoins that this Court need not be constrained by McGoff's discussion of § 612(a) because it was pure *dicta* and, alternatively, that this case is distinguishable because it arises in the civil- rather than criminal-enforcement context.  The Court will address both arguments in turn.

### 1.  Dicta

The Government first contends that Wynn relies "almost entirely on two pieces of dicta in the majority opinion's analysis" and that "[n]either of these passing references . . . was outcome-determinative or otherwise central to the holding in McGoff."  ECF No. 14 (MTD Opp.) at 10.  On the contrary, "the decisive question in resolving the statute-of-limitations issue

13

. . . turn[ed] on the duration of the registration obligation of section 612(a)." McGoff, 831 F.2d at 1081–82. Had the McGoff court instead embraced the dissent's reading of § 612(a), it could not have affirmed the district court on the statute-of-limitations issue. Indeed, much more than just "two pieces of dicta," that opinion devotes nearly ten pages of a 25-page opinion just to the question of the registration obligation in § 612(a).

The necessity of this holding to the decision is also clear in the analytical process the McGoff majority followed. The court began with § 618(e), which created a continuous offense for "such failure," which, the court reasoned, referred to "'[f]ailure to file any such registration statement . . . as is required by . . . section 612(a).'" Id. at 1079. It concluded, consequently, that "[a] parsing of section 618(e) thus shows that resolution of the [statute-of-limitations] issue . . . lies in the duration of the obligation to file imposed by section 612(a)" and that, therefore, the court's "focus . . . must necessarily include the proper interpretation of the latter provision." Id. (emphasis added).

"It is true that a statement not necessary to a court's holding is dictum," In re Grand Jury Investigation, 916 F.3d 1047, 1053 (D.C. Cir. 2019), and "dictum is not binding circuit precedent." Jam v. Int'l Fin. Corp., 3 F.4th 405, 409–10 (D.C. Cir. 2021). But "a necessary antecedent to determining" an issue before the court is not dictum, In re Grand Jury Investigation, 916 F.3d at 1053, and this Court is "bound . . . 'not only [by] the result' of a prior case, 'but also [by] those portions of the opinion necessary to that result.'" Int'l Union, Sec., Police & Fire Pros. of Am. v. Faye, 828 F.3d 969, 974 (D.C. Cir. 2016) (quoting Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 67 (1996)). Although the question presented in McGoff was "when the statute of limitations for a continuing offense charge under § 618(e) begins to run, not on whether retrospective civil enforcement actions could be brought," MTD Opp. at 11, the

14

majority went to great pains to explain the necessity of deciding the temporal scope of § 612(a) to the statute-of-limitations issue. Whether that interpretation is correct or even the most plausible interpretation of the text is not an appropriate inquiry for this Court, which must follow binding Circuit precedent.

The Government nevertheless insists that, rather than establishing a controlling interpretation of § 612(a), the majority in McGoff stopped short and merely concluded that the provision is "ambiguous" and that the ultimate decision "rested not on its interpretation of the text of § 612(a) but its review of the legislative history for that provision." MTD Opp. at 10. True enough, the McGoff majority did concede that, although one "reading [of the provision] would strongly be preferred upon consideration of the statutory text alone, . . . since neither can confidently be excluded, we are constrained to conclude that section 612(a) is ambiguous." McGoff, 831 F.2d at 1083. The court then "turn[ed] to the legislative history" to "discern, if at all possible, Congress' intent on th[e] issue." Id. at 1084.

Courts, of course, do not examine legislative history in a vacuum. Rather, as the McGoff majority did, they interpret statutes, and they look to extrinsic materials such as legislative history only to resolve statutory ambiguity. See Exxon Mobil Corp v. Allapattah Servs., Inc., 545 U.S. 546, 568 (2005) ("Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms."); see, e.g., Milner v. Dep't of the Navy, 562 U.S. 562, 574 (2011) ("Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it."); Bruesewitz v. Wyeth LLC, 562 U.S. 223, 242 (2011) ("[L]egislative history is persuasive to some because it is thought to shed light on what legislators understood an ambiguous statutory text to mean when they voted to enact it into law.").

15

The McGoff majority explicitly acknowledged that it could not stop at a mere finding of ambiguity, noting instead that it would have to resolve any ambiguities in the text that it encountered. See 831 F.2d at 1084 n.22 (distinguishing its decision from cases involving Chevron deference where court could defer ambiguity to an agency). Far from "not embrac[ing]" a particular reading of § 612(a), the majority actually made its interpretation of the statute a central part of its holding. See MTD Opp. at 10.

Regardless of whether the majority relied exclusively on the statutory text or a combination of the text and the legislative history to reach its conclusion, the end result was a binding interpretation of the duration of the obligation in § 612(a), which this Court is obligated to follow.

### 2.    Civil-Enforcement Context

The Government next asserts that McGoff is inapplicable because that case involved a criminal-enforcement action under FARA § 618(e), whereas this case arises in the civil-enforcement context for an injunction under § 618(f). See MTD Opp. at 11. It bolsters this argument by highlighting that the McGoff majority made "references to how its analysis was influenced by considerations specific to the criminal context," id. at 11, including the rule of lenity. Id. at 12.

As an initial matter, it is not at all clear that the holding in McGoff depends on the rule of lenity. As the majority noted in its initial discussion of § 612(a), the "ambiguity in the statute alone would appear to suffice in the criminal setting to invoke the time-honored rule of lenity," 831 F.2d at 1084, but the court then refused to end its analysis there and moved on to consider the legislative history of that provision. See also id. at 1096–97 (noting that although the majority holding "finds solid support . . . in the rule of lenity," "our review of the text of the

16

relevant statutory provisions, the statute as a whole, and the legislative history convinces us that" this reading of sections 612(a) and 618(e) "is correct").

Even so, the same statutory text cannot bear one meaning in the criminal context and an entirely different meaning in the civil context. Instead, the Supreme Court has held that "we must interpret [a] statute consistently, whether we encounter its application in a criminal or noncriminal context," Leocal v. Ashcroft, 543 U.S. 1, 11 n.8 (2004), and that includes when the rule of lenity has been applied to that statutory provision. See Kasten v. Saint Gobain Performance Plastics Corp., 563 U.S. 1, 16 (2011); United States v. Thompson/Center Arms Co., 504 U.S. 505, 517–18 & n.10 (1992).

The Government responds that even if lenity can be applied to a "statutory provision with both criminal and noncriminal application," MTD Opp. at 12, this argument has no bearing on Wynn's case because it involves the civil remedies available to the Government under § 618(f), which McGoff did not purport to interpret. But this point, too, misses the mark. The Government is right that McGoff did not attempt to interpret or apply the rule of lenity to § 618(f), which has no criminal application. The relevant provision in this case, however — as it was in McGoff — is not § 618(f) but instead § 612(a), which sets out the duration of the registration obligation. Section 618(f) merely creates the cause of action, providing that "whenever any agent of a foreign principal fails to comply with any of the provisions of this subchapter[,] . . . the Attorney General may make application to the appropriate United States district court for an order enjoining such acts." 22 U.S.C. § 618(f). The provision that the Government actually seeks to enforce with its desired injunction, and which it alleges that Wynn has failed to comply with, is the registration requirement of § 612(a). See Compl., ¶ 1 (seeking to "compel the Defendant, Stephen A. Wynn, pursuant to 22 U.S.C. § 618(f), to submit a true

17

and complete registration statement, and supplements thereto, to the Attorney General, <u>as required by 22 U.S.C. § 612(a)-(b)</u>" (emphasis added)).  That latter provision was what <u>McGoff</u> interpreted, and to the extent that the majority there applied the rule of lenity in doing so, that interpretation would also control here.  If an interpretation of § 618(f) exists that would allow the Government to compel Wynn to register today notwithstanding <u>McGoff</u>'s interpretation of the registration obligation in § 612(a), the Government does not provide it here.  In fact, it does not engage at all with the text of that provision — or of § 612(a) for that matter — beyond insisting that § 618(f) is the basis for distinguishing <u>McGoff</u> .

Of equal importance, both the majority and dissent in <u>McGoff</u> were keenly aware that the prevailing interpretation of § 612(a) in the criminal context would likely substantially constrain the Attorney General from seeking injunctive relief.  In dissent, Judge Bork criticized the majority's opinion on this ground, warning that a cramped interpretation of § 612(a)'s registration obligation meant also that "the civil injunctive remedy available to the United States for 'any acts . . . [in] violation of[,] . . . or [any failure] to comply with[,] any of the provisions of [the Act],' also now will be unavailable to compel anyone to file a registration statement once his agency has ended."  831 F.2d at 1103 (Bork, J., dissenting) (internal citations omitted) (alterations in original).  He reasoned that if the "obligation to file ends with the termination of the agency relationship, then regardless of what the statute of limitations may be, the United States will be unable to use an injunction to compel registration, since the agent is no longer under any obligation to register."  <u>Id.</u>

To rebut this prescient point, the Government here merely states that the majority "declin[ed] to adopt the dissent's view that the . . . ruling precludes the Government's ability to bring civil enforcement actions."  MTD Opp. at 12.  That is not exactly so since the majority

attempted to deflect criticism on this point by noting that if, for the sake of argument, "injunctive remedies would not lie once the individual's agency status has terminated," the Government could still "secure an indictment for the agent's willful failure to register" for five years after the end of the agency relationship. McGoff, 831 F.2d at 1094 n.32. That hardly offers much daylight to the Government now.

*    *    *

The Government insists that its aim in this lawsuit — "to compel disclosure to allow government officials as well as the public to evaluate" Wynn's activities as an agent of a foreign principal — is "plainly consistent with the central goal of FARA." MTD Opp. at 12–13. The Court does not disagree. FARA is broad in scope and has as its ambitious purpose the support of the principle that "in modern government[,] public disclosure is needed in order for the public (and, at times, the Government itself) accurately to evaluate such activities," including those undertaken on behalf of a foreign principal. McGoff, 831 F.2d at 1074; see also Meese v. Keene, 481 U.S. 465, 469–70 (1987) (noting that "comprehensive" nature of FARA's registration requirement applies equally to "friendly, neutral, and unfriendly"). Indeed, the Court does not dispute that even agents who have since ended their agency relationship but who never registered their activities are still in possession of "information that [FARA] says the public needs." McGoff, 831 F.2d at 1099 (Bork, J., dissenting). While the goals of FARA are laudable, this Court is bound to apply the statute as interpreted by the D.C. Circuit. And that requires dismissal.

## IV.     Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss. A contemporaneous Order so stating will issue this day.

19

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: October 12, 2022